## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

RUSSEL C. SIMON,

      Trustee,

vs.

VERLA J. MYERS,

      Debtor.

In Proceedings Under
Chapter 13

Case No.: 07-30765

## OPINION

This matter is before the Court on the Chapter 13 Trustee's objection to confirmation of debtor's proposed Chapter 13 plan. The Trustee alleges that debtor cannot pay post-petition interest on an unsecured co-debtor claim through her Chapter 13 plan, and that payment of such interest unfairly discriminates against debtor's general unsecured creditors in violation of 11 U.S.C. § 1322(b)(1).

The relevant facts of the case are not in dispute. Debtor's proposed sixty-month plan includes an unsecured debt owed to creditor CitiFinancial.[1] John Hunt is listed in the plan as a co-debtor on CitiFinancial's claim.[2] Debtor's plan proposes to pay CitiFinancial $20,126.00, plus post-petition interest accruing at the contract rate of 16.99 percent. Including interest, debtor's plan proposes to pay CitiFinancial a total amount of

---

[1] CitiFinancial filed the claim at issue as secured in the amount of $14,984.06. However, CitiFinancial failed to submit any documentation in support of its alleged secured status. The Trustee subsequently objected to the secured status of the claim and the objection was sustained on November 8, 2007 after CitiFinancial failed to respond.

[2] Although the debtor did not identify her relationship with the co-debtor, the Trustee asserted in his brief that the co-debtor is debtor's step-father.

$29,582.96.[3]  Debtor proposes to pay the remaining unsecured creditors, whose debts total over $25,000.00, only $400.00.

The Trustee does not object to the separate classification of Citifinancial's unsecured debt.    Rather, the Trustee argues that debtor's proposed payment of post-petition interest on CitiFinancial's unsecured claim is not authorized by the Bankruptcy Code and further, that payment of such interest unfairly discriminates against other unsecured creditors in violation of 11 U.S.C. § 1322(b)(1).    Debtor responds that the payment of post-petition interest is necessary to prevent CitiFinancial from obtaining relief from the co-debtor stay under 11 U.S.C. § 1301.  In order to resolve the issue of whether debtor can pay post-petition interest on Citifinancial's unsecured claim, the Court must examine the meaning of the words "such claim" in § 1301(c)(2).

Section 1301 reads in pertinent part:

> (c)  On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that….

> (2)  the plan filed by the debtor proposes not to pay *such claim*…

11 U.S.C. § 1301 (emphasis added).  Courts are split on the meaning of the term "such claim" as used in this section.  Those courts holding that "claim" includes post-petition interest rely, in large part, on the legislative history of § 1301.  For example, in *In re Monroe*, 281 B.R. 398 (Bankr.N.D.Ga. 2002), the court held that debtor could file an amended plan to include payment of post-petition interest on the unsecured portion of a creditor's claim.  *Id.* at 403.  The *Monroe* court relied on another decision, *Southeastern Bank v. Brown*, 266 B.R. 900 (Bankr.S.D.Ga. 2001), a case that analyzed the interplay

---

[3]  Debtor's plan proposes to pay CitiFinancial a total of $29,582.96 over 60 months based on a claim amount of $20,126.00.  It is unclear how debtor arrived at the $20,126.00 figure, since the proof of claim filed by Citifinancial was in the amount of $14,984.05.

between § 1301 and § 1322, and that examined in detail the legislative history of § 1301. In *Southeastern*, the court concluded that "Congress clearly intended for the co-debtor stay to be lifted to the extent the plan does not provide for full payment of the claim, including interest," *Id*. at 906, and accordingly, that "[d]ebtors may include post-petition interest on cosigned debts in their repayment plans." *Id*. at 910. *See also In re Campbell*, 242 B.R. 547, 549 (Bankr.S.D.Ga. 1999) (the only way to vindicate the Code's intent to fully protect co-debtors is to allow payment of post-petition interest); *In re Butler*, 242 B.R. 553, 558 (Bankr.S.D.Ga. 1999) (debtor must pay post-petition interest to avoid co-debtor stay relief).

In contrast, those courts holding that "claim" does **not** include post-petition interest focus, in part, on § 502(b)(2) of the Bankruptcy Code, which explicitly disallows the inclusion of unmatured interest in a claim and which provides, in pertinent part:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects….
>
> (b) [I]f such objection to a claim is made, the court … shall determine the amount of such claim … as of the date of the filing of the petition, and shall allow such claim in such amount, *except to the extent that*….
>
> (2)  such claim is for *unmatured interest*.

11 U.S.C. § 502(b)(2) (emphasis added).   The same courts also hold that the wording in § 1301(c)(2) is unambiguous and that reliance on legislative history is therefore misplaced.

For example, in *In re Alls*, 238 B.R. 914 (Bankr.M.D.Ga. 1999), a creditor filed a motion for relief from the co-debtor stay, alleging in part that debtor did not propose to pay its unsecured claim in full, including post-petition interest.   The court noted that "section 502(b)(2) generally disallows payment of postpetition interest on unsecured

claims." *Id*. at 920.  The court then held that "claim" in §1301(c)(2) does not include

post-petition interest, explaining as follows:

> The question to be answered is whether Debtor's plan proposes to pay
> the "claim."  To be paid, a claim must be asserted by filing it with the
> court….Claims are deemed allowed if there is no objection. *Id*. § 502(a).
> If there is an objection, as in this case, the court is required to disallow the
> postpetition interest portion of the claim.  *Id*. § 502(b)(2).  Thus, the term
> "claim" as used in section 1301(c)(2) can consist only of the principal and
> interest owed on a debt at the time the bankruptcy petition is filed and may
> not include unmatured interest in the form of postpetition interest.

*Id*.  With respect to the legislative history of § 1301(c)(2), the court stated:

> The legislative history, not the provisions of the Code, have created the
> dilemma….While it may be convenient for the legislative body to state
> an abstract objective in its legislative history, it does not follow that
> seemingly inconsistent code provisions should be construed in conflict
> with their plainly worded and previously established meaning to give
> effect to the stated legislative intent….Congress was fully capable of
> amending section 502(b)(2) to provide an exception for the allowance
> of a claim for unmatured interest in this case.  Whether the omission
> is accidental or intentional is a matter for Congress, not the courts, to
> declare.  Without the legislative history regarding the payment of interest,
> the provisions of section 1301(c)(2) would not be ambiguous.

*Id*. at 919.     The court concluded that as long as the plan proposed to pay the creditor's

allowed claim in full, the Court was without authority to grant the creditor relief from the

co-debtor stay.  *Id*. at 920.

In *In re Deen*, 260 B.R. 577 (Bankr.S.D.Ga. 2000), the court reaffirmed the

holding in *Alls*.  In *Deen*, the creditor filed for relief from stay alleging that the debtor's

plan did not propose to pay its claim in full because of the exclusion of post-petition

interest.  The court found that § 1301(c)(2) "requires the Court to inquire into the amount

that a debtor proposes to pay under the plan" and that "[s]ection 1301(c)(2) must

necessarily refer to an 'allowed' claim, the amount that the Code will allow the debtor to

pay pursuant to Section 502."  *Id*. at 582 (citations omitted).    The court explained that

"[o]therwise, Section 1301(c)(2) could be absurdly construed to require a Chapter 13 debtor, who needs to protect a codebtor from stay relief, to file a plan that cannot be confirmed because it proposes to make payments that the Code will not allow the debtor to make." *Id.*   The *Deen* court found the absence of the term "allowed" in § 1301(c)(2) insignificant:

> The absence of the term "allowed" in Section 1301(c)(2) does not create a special exception to the general rule, provided at Section 502(b)(2), disallowing claims for unmatured interest….Sections 1122 and 1322, for example, do not refer to the classification of both allowed and disallowed claims.  The Code does not explicitly identify the claims addressed in these sections as "allowed" claims, and it is not necessary for them to do so.  Because it is understood that a disallowed claim is excluded from participation in a reorganization plan, it would be redundant to use the term "allowed" in referring to the claims addressed in Sections 1122 and 1322. Similarly, modifying the term "claim" with the term "allowed" in Section 1301(c)(2) would be redundant because the Chapter 13 Debtor's plan may not provide for payment of claims other than allowed claims.

*Id.* (citations omitted).[4]

Similarly, in *In re Janssen*, 220 B.R. 639 (Bankr.N.D.Iowa 1998), the Chapter 13 trustee objected to debtor's proposed plan because it separately classified a cosigned debt and included payment of post-petition interest on that debt.  The court stated that the "term 'claim' as used in [§ 1301(c)(2)] is not normally considered to include post-petition interest." *Id.* at 645.   The court noted that interpreting "claim" to include post-petition

---

[4]  In *Southeastern Bank v. Brown*, 266 B.R. 900 (S.D. Ga. 2001), a case before the United States District Court for the Southern District of Georgia, the court disagreed with the decisions in *Alls* and *Deen*.  The court in *Southeastern* found that § 1301(c)(2) was, at best, ambiguous.  This finding allowed the court to examine the legislative history and, based on that history, to hold that debtors could include in their plan payment of post-petition interest on co-signed debts.  This Court acknowledges the District Court's disagreement with the Bankruptcy Court's holdings in *Alls* and *Deen*, but finds the analysis and discussion of the use of legislative history set forth by the court in *Alls* to be more persuasive than that proposed by the court in *Southeastern*.  In any event, the Court is not bound by a decision from the Southern District of Georgia.

interest would render §§ 502(b)(2) and 506(b)[5] - both of which deal with the ability of creditors to obtain post-petition interest in addition to the amount of their claim - moot. *Id*. The court further held that when "a debtor separately classifies an unsecured creditor allowing it to receive the full amount of its claim, the creditor is not entitled to relief from the co-debtor stay during the life of the plan to obtain post-petition, contractual interest." *Id*. at 646.

This Court agrees with the reasoning in *Alls*, *Deen*, and *Janssen*. Reading §§ 502(b)(2) and 1301 together, it is clear that "claim" in § 1301(c)(2) does not include post-petition interest. To hold otherwise would render § 502(b)(2) meaningless and § 506(b) superfluous. While debtor argues that § 1301(c)(2) creates an exception to the general rule disallowing claims for post-petition interest, the cases cited by debtor rely on the legislative history of §1301(c)(2). The Court, however, finds that there is no ambiguity in the statute, and therefore, reference to legislative history is neither proper nor necessary. In addition, under debtor's interpretation, a creditor could obtain relief from the co-debtor stay if the proposed plan did not include payment of post-petition interest. In other words, the plan would have to propose to pay a claim that is expressly disallowed by § 502(b)(2) or, in other words, ***a plan that cannot be confirmed*** by the Court. As noted by the court in *Deen*, it is absurd to think that the Bankruptcy Code would penalize a debtor for not including a provision in the plan that would, by its very presence, doom any chance the plan has of being confirmed.

---

[5] Section 506(b) contains an exception to the rule against post-petition interest, and provides that "[t]o the extent that an allowed secured claim is secured by property the value of which, after the recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim…." 11 U.S.C. § 506(b).

Finally, debtor appears to also argue that § 1322(b)(1)[6] permits the payment of post-petition interest on Citifinancial's claim.  However, while this section permits separate treatment of co-debtor unsecured claims, the section does not authorize payment of post-petition interest on such claims.  Instead, § 1322(b)(1) "merely allows separate classification of codebtor, unsecured claims so that a debtor can pay more on such claims than on other unsecured claims."  *In re Alls*, 238 B.R. at 920.

For these reasons, the Court finds that debtor may not pay post-petition interest on a co-signed debt that has been separately classified in her Chapter 13 plan.  Therefore, the trustee's objection to confirmation is SUSTAINED.

See Order entered this date.

ENTERED: January 30, 2008

/s/ Kenneth J. Meyers
UNITED STATES BANKRUPTCY JUDGE

---

[6]   Section 1322(b)(1) provides:

Subject to subsections (a) and (c) of this section, the plan may---

(1) designate a class or classes of  unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other  unsecured claims.

11 U.S.C. § 1322(b)(1).